UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Deborah Lou Simonson f/k/a
Deborah Lou Roeder,

        Plaintiff,

v.

Ameriquest Mortgage Company,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 06-2943 ADM/AJB

_____

John M. Tancabel, Esq., John M. Tancabel Law Office, St. Paul, MN, argued for and on behalf of Plaintiff.

Seth Leventhal, Esq., Dorsey & Whitney LLP, Minneapolis, MN, argued for and on behalf of Defendant.

_____

## I. INTRODUCTION

On October 12, 2006, oral argument before the undersigned United States District Judge was heard on Defendant Ameriquest Mortgage Company's ("Ameriquest" or "Defendant") Motion to Dismiss [Docket No. 3]. In her First Amended Complaint (Tancabel Decl. [Docket No. 18] Ex. A), Plaintiff Deborah Lou Simonson ("Plaintiff") seeks a declaratory judgment that a mortgage between Plaintiff and Defendant is largely invalid. Plaintiff also seeks injunctive relief and damages based on breach of contract, consumer fraud, and unjust enrichment. For the reasons set forth below, Defendant's Motion to Dismiss is granted in part and denied in part.

Defendant has also filed a Motion to Strike [Docket No. 10]. For the reasons set forth below, Defendant's Motion to Strike is granted in part and denied in part.

## II.  DEFENDANT'S MOTION TO STRIKE

Ameriquest moves to strike the affidavits of Deborah Lou Simonson [Docket No. 16] and Chad Paul Roeder [Docket No. 17] in their entirety.  The affidavits mainly repeat the allegations in the Amended Complaint, although in a few instances additional facts are provided regarding events referred to in the Amended Complaint and regarding the current occupants of the Colorado Avenue residence.  Consideration of this supplementation of collateral matters not central to the Amended Complaint is inappropriate on a motion to dismiss.  See Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992) (applying a broad interpretation of Fed. R. Civ. P. 12(b)'s prohibition on consideration of "matters outside the pleading").  Therefore, Ameriquest's Motion to Strike is granted as it pertains to the affidavits.  The Court notes that the matters within the affidavits would not change its ruling regarding Defendant's Motion to Dismiss even if considered.

Ameriquest also moves to strike the portion of Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss [Docket No. 15] that refers to other court proceedings and actions taken by state attorneys general.  Unlike the affidavit issue, the references in Plaintiff's Memorandum to other cases and attorneys general actions are heavily relied upon by Plaintiff to support her ability to bring claims under the Minnesota Consumer Fraud Act, Minn. Stat. §§ 325F.68-.70 ("MCFA").  For the sake of addressing Plaintiff's claims on their merits, these materials will be considered.  Given the result that Plaintiff's references to other proceedings can not support her ability to bring claims under the MCFA, Ameriquest's Motion to Strike a portion of Plaintiff's Memorandum is denied as moot.

## III.  DEFENDANT'S MOTION TO DISMISS

**A.    BACKGROUND**

On February 14, 1991, Plaintiff, then a single woman known as Deborah Lou Roeder, purchased a home at 7825 Colorado Avenue North, Brooklyn Park, MN 55443, legally described as "Lot 12, Block 1, Shingle Creek Heights, Hennepin County" (the "Colorado Avenue residence").  Am. Compl. ¶ 2.  As part of the purchase, Plaintiff made payments on a mortgage as well as payment of $60 per month on a contract for deed.  Id. ¶ 4.  Plaintiff has resided at the Colorado Avenue residence since she purchased it.  Id. ¶ 3.  On June 18, 1996, Plaintiff married Ronald Jeffrey Simonson in South Dakota, and became known as Deborah Lou Simonson.  Id. ¶ 5; Compl. (Notice of Removal [Docket No. 1] Ex. A) Ex. B.  Plaintiff and Ronald Simonson remain married.  Am. Compl. ¶ 6.

In early 1999, Plaintiff applied for a mortgage with Ameriquest.  Am. Compl. ¶ 7.  Ameriquest loan officer Van Guentzel handled Plaintiff's loan application, and presented the loan documents for signature at Plaintiff's residence on February 11, 1999.  Id. ¶¶ 7, 9; Hill Decl. [Docket No. 7] Ex. B.[1]  Plaintiff alleges that during this visit she informed Van Guentzel that she was married to Ronald Simonson and that Ronald Simonson lived at a separate residence.  Am. Compl. ¶ 8.  According to Plaintiff, Van Guentzel said he would list Plaintiff's marital status as "single" on the loan documents to avoid the extra work of obtaining Ronald Simonson's signature.  Id. ¶¶ 10-11.  Plaintiff, allegedly following Van Guentzel's instructions, signed the

---

[1] Although copies of the loan documents were not attached to the Amended Complaint, this Court may examine copies provided by Ameriquest because the loan documents are "necessarily embraced by the complaint."  Enervations, Inc. v. Minnesota Mining and Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004) (stating that "documents 'necessarily embraced by the complaint' are not matters outside the pleading").

mortgage loan documents as "Deborah L. Roeder" and "DLR." Hill Decl. Exs. A-C. The documents refer to Plaintiff as "a single woman." Id. Exs. B-C. As part of the transaction, Plaintiff received a loan of $70,000 and signed an Adjustable Rate Note (the "Note") to repay the loan with interest. Id. Ex. A. The loan was secured by a mortgage of the Colorado Avenue residence. Id. Ex. B. Additionally, Plaintiff signed a "Borrower's Certification & Authorization" certifying that the information in her loan application "is true and complete." Id. Ex. H. Plaintiff used approximately $5,000 of the loan proceeds to pay the unpaid purchase price remaining under the contract for deed. Am. Compl. ¶ 14.

Plaintiff failed to meet the payment schedule set forth in the Note. Compl. ¶ 19. In December 2004, Ameriquest notified Plaintiff of a pending foreclosure sale. Hill Decl. Ex. D.[2] On February 10, 2005, at the foreclosure sale, Ameriquest acquired the Colorado Avenue residence for $128,508.98. Id. Ex. E. After the redemption period expired, Ameriquest initiated an eviction action in Hennepin County Housing Court (Court File. No. 27CVHC06-115). Am. Compl. ¶ 24. An Order for a Writ of Recovery of Premises was issued to Ameriquest by the Hennepin County Housing Court on May 25, 2006. Hill Decl. Ex. G. Issuance and execution of the Writ were stayed, however, so Plaintiff could file what is currently this federal action in Hennepin County District Court. Id. Plaintiff did so on June 7, 2006. On July 7, 2006, Defendant removed the action to this Court under 28 U.S.C. §§ 1332, 1441, and 1446.

Plaintiff alleges that she learned for the first time during the Housing Court proceeding that the lack of a spouse's signature may affect the validity of the mortgage. Mem. in Opp'n to

---

[2] Ameriquest has provided copies of documents that relate to the foreclosure and a subsequent eviction proceeding. This Court has considered only those documents that are referred to and "necessarily embraced by the complaint." Enervations, 380 F.3d at 1069.

Mot. to Dismiss at 7. Plaintiff seeks a declaratory judgment (1) that the mortgage is invalid to the extent of $65,000 due to the misrepresentation, (2) that Plaintiff was obligated to repay only the $5,000 used for the unpaid purchase price on the contract for deed, (3) that the foreclosure had no legal effect, and (4) that Plaintiff is the owner of the Colorado Avenue residence. Plaintiff also asserts claims for breach of contract, consumer fraud under the MCFA, and unjust enrichment. Plaintiff seeks damages, costs and attorney's fees, and injunctive relief.

**B.     Standard of Review**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

**C.     The Validity of the Mortgage**

Plaintiff seeks a declaratory judgment that the mortgage is invalid except to the extent that it secures the $5,000 used to pay purchase money for the deed. Plaintiff relies on Minn. Stat. § 507.02, which states, "[i]f the owner is married, no conveyance of the homestead, except a mortgage for purchase money unpaid thereon . . . shall be valid without the signatures of both

5

spouses." In response, Ameriquest argues that Plaintiff can not be allowed to benefit from a misrepresentation regarding her marital status in which she knowingly participated.

It has long been a policy of Minnesota law, however, "to protect with jealous zeal the homestead right of the citizen and his wife and minor children . . . . [Minnesota] statutes . . . have been carefully designed to effectuate this policy and to preserve the homestead to the family even at the sacrifice of just demands." Holden v. Farwell, Ozmun, Kirk & Co., 27 N.W.2d 641, 646 (Minn. 1947). Here, the mortgage was not signed by Ronald Simonson, Plaintiff's spouse. The Minnesota Supreme Court has "held many times that without the signatures of both spouses a conveyance of homestead property is not merely voidable but is void and the buyer acquires no rights whatsoever." Dvorak v. Maring, 285 N.W.2d 675, 677 (Minn. 1979); see also Wells Fargo Home Mortgage, Inc. v. Newton, 646 N.W.2d 888, 897 (Minn. Ct. App. 2002). Under certain circumstances, however, "a party may be estopped from denying a sale of the homestead even if the statutory requirements are not met." Dvorak, 285 N.W.2d at 677. Such an estoppel often results "from the nonsigning spouse's consent and full knowledge of the transaction, retention of benefits, and delivery of possession to the grantee, who typically took possession and made valuable improvements." Id. at 677-78.

In the instant case, it is unclear what, if anything, Ronald Simonson knew about the mortgage transaction, and whether he benefitted from the transaction. Given the undeveloped state of the record, the Court is constrained to deny Ameriquest's Motion to Dismiss insofar as it relates to Plaintiff's challenge to the validity of the mortgage. Plaintiff has sufficiently stated a claim that her mortgage is invalid beyond the $5,000 used to pay purchase money. A motion for summary judgment will be the proper context to decide whether estoppel, laches, or other

considerations[3] preclude Plaintiff from contesting the validity of the mortgage.

**D.     Plaintiff's Fraud Claims**

Ameriquest argues that Plaintiff's claims for fraud under the MCFA are barred by the statute of limitations. Ameriquest relies on Minn. Stat. § 541.05, which states that claims "[u]pon a liability created by statute" and "[f]or relief on the ground of fraud" must be commenced within six years. Minn. Stat. §§ 541.05(2) and (6). Ameriquest asserts that the six-year statute of limitations began to run on February 11, 1999, when Plaintiff signed the mortgage loan documents as "Deborah L. Roeder, a single woman." If the statute of limitations began to run on that date, then Plaintiff's fraud claims, filed on June 7, 2006, are untimely. Arguing against this result, Plaintiff states that only recently did she learn that the misrepresentation regarding her marital status could affect the validity of her mortgage.

The conclusion is inescapable, however, that the statute of limitations has expired on Plaintiff's fraud claims. The statute of limitations on fraud actions begins to run at the point of "discovery by the aggrieved party of the facts constituting the fraud." Minn. Stat. § 541.05(6). No statute or case requires that the aggrieved party know all the legal consequences that flow from those facts. See Fleck v. Cablevision VII, Inc., 799 F. Supp. 187, 190 (D.D.C. 1992) ("Knowledge of the fraudulent activity occurs when a plaintiff has knowledge of the facts that constitute the cause of action, not when he attains knowledge of the legal significance of those facts."). Here Plaintiff knew of the facts constituting the fraud—Van Guentzel's alleged

---

[3] Ameriquest suggests that a mediated settlement agreement signed by Plaintiff prevents her from contesting the validity of the mortgage. The settlement is neither mentioned in the Amended Complaint nor is it necessarily embraced by the Amended Complaint. Therefore it is premature for the Court to address the legal significance of the settlement in the context of a motion to dismiss.

instructions that Plaintiff sign the mortgage as if she was a single woman—on February 11, 1999. Therefore, the statute of limitations began to run on that date, and expired six years later. Plaintiff's claims sounding in fraud are dismissed as untimely.

Alternatively, Plaintiff's claims under the MCFA must be dismissed because she does not have standing to bring suit under the statute. To assert claims under the MCFA, Plaintiff relies on Minn. Stat. § 8.31, subd. 3a., the Minnesota Private Attorney General Statute. However, "[t]he Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public." Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000). Here, Plaintiff claims she "was defrauded in a single one-on-one transaction in which the fraudulent misrepresentation . . . was made only to [her]," Id., and the damages she has allegedly suffered are personal and individualized. Thus, "[a] successful prosecution of [her] claim does not advance state interests and enforcement has no public benefit." Id.

Arguing against this result, Plaintiff suggests that the injunction she seeks would benefit the public by preventing Ameriquest from engaging in similar transactions with other customers. Plaintiff refers generally to other court actions, and to a settlement agreement that Ameriquest and various state attorneys general entered into regarding Ameriquest's allegedly unscrupulous lending practices. General references to other proceedings, however, do not demonstrate how a successful prosecution of Plaintiff's lawsuit will confer a public benefit. Moreover, the fact that state attorneys general, who are responsible for protecting the public interest, reached a settlement with Ameriquest suggests that Plaintiff's lawsuit can confer only a negligible additional public benefit. Because she can not show that her lawsuit can provide a public benefit, Plaintiff can not employ the Private AG Statute to assert claims under the MCFA.

Accordingly, Plaintiff's claims under the Act must be dismissed.

**E.     Plaintiff's Claims for Breach of Contract and Unjust Enrichment**

Plaintiff's theory for her breach of contract and fraud claims is that the absence of Ronald Simonson's signature on the mortgage means that under Minn. Stat. § 507.02 the mortgage is valid only to the extent of $5,000, the amount of the loan proceeds applied to the purchase price for the deed to the residence. Plaintiff argues that all payments in excess of this amount unjustly enriched Ameriquest and constitute a breach of contract. In response, Ameriquest urges that Plaintiff's breach of contract and unjust enrichment claims must be dismissed because Plaintiff's legal theory is flawed and because the statute of limitations has run.

This Court agrees that Plaintiff's breach of contract and unjust enrichment claims must be dismissed. Plaintiff's theory behind both claims is that if the mortgage is void beyond the $5,000 used to pay unpaid purchase money, then the Note must also be void beyond the $5,000 used to pay unpaid purchase money. However, "a mortgage and a note are separate and independent contracts, differing in their nature and purpose. The note is a distinct instrument enforceable according to its terms and independently of the mortgage." Lundberg v. Nw. Nat'l Bank of Minneapolis, 216 N.W.2d 121, 123 (Minn. 1974). Thus, even assuming that Plaintiff's mortgage is void, the Note may still be enforced. Plaintiff's Complaint alleges no facts to support a finding that any portion of the Note is void. Therefore, Plaintiff has not stated a claim for breach of contract or for unjust enrichment. Accordingly, those claims must be dismissed. Regardless of the outcome of Plaintiff's challenge to the validity of the mortgage, Plaintiff is liable for amounts due and owing under the Note.

Alternatively, Plaintiff's claims for breach of contract and unjust enrichment are

9

dismissed as untimely. Under Minnesota law, "claims alleging breach of contract, promissory estoppel, unjust enrichment, and impairment of contract all rest on the same facts, and all are governed by a six year statute of limitations." Jacobson v. Bd. of Trs. of the Teachers' Ret. Ass'n, 627 N.W.2d 106, 110 (Minn. Ct. App. 2001), citing Minn. Stat. ¶¶ 541.05(1), (2), (5). The statute of limitations begins to run when a cause of action accrues. Minn. Stat. § 541.01. Assuming arguendo that Plaintiff's theory of breach of contract and unjust enrichment is valid, she was aware in 1999 when she made her first loan payment that her husband had not signed the mortgage. Therefore, Plaintiff's cause of action accrued in 1999, and the statute of limitations began to run then. Plaintiff's breach of contract and unjust enrichment claims, filed on June 7, 2006, are untimely.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Docket No. 3] is **GRANTED IN PART AND DENIED IN PART**.

2. Defendant's Motion to Strike [Docket No. 10] is **GRANTED IN PART AND DENIED IN PART**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 30, 2006.